**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 25-cr-159 (TJK) |
| : | |
| MATTHEW GREEN, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. On July 8, 2025, Matthew Green (hereafter, the "defendant") pleaded guilty to a two-count information charging him with conspiring to possess with the intent to distribute a mixture and substance containing a detectable amount of Phencyclidine (PCP), a mixture and substance containing a detectable amount of cocaine base, and a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and (b)(1)(D); and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). For the reasons set forth below, the United States respectfully requests the Court impose a sentence of 106 months' imprisonment to be followed by 3 years of supervised release.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

In the Summer of 2024, members of the Federal Bureau of Investigation ("FBI") led an investigation into a narcotics trafficking conspiracy centered around the 2900 block of Knox Place SE. The year-long investigation culminated in the return of an eight-count indictment on August 21, 2025, in *United States v. Thomas Hancock, et al.*, 25-cr-241 (TJK).

During the investigation, law enforcement identified Eric Prather (hereafter, "Prather") as a prolific fentanyl and PCP dealer with at least one stash house at 2926 Knox Place SE. From

August 2024 through July 2025, law enforcement conducted twenty controlled buys of fentanyl and PCP, eighteen of which occurred with Prather.

Further, the investigation revealed that the defendant was among Prather's PCP sources of supply. Specifically, during the October 3, 2024 controlled buy at the 2926 Knox Place stash house, the undercover officer ("UC") purchased from Prather 27.51 grams of fentanyl and six vials of PCP, the latter of which Prather, in turn, procured from the defendant Matthew Green. Specifically, around 1:41 pm on October 3, 2024, the UC met Prather inside the common area of 2926 Knox Place SE. Prather went inside his stash house in Unit 102 of the building to obtain the powdered fentanyl ultimately sold to the UC. Prather then stepped into the threshold of the building's exterior door, waving in someone, ultimately identified as the defendant. The defendant entered the building, walked into Unit 101, then returned to the common area of the building with several vials of approximately 0.50 ounces of PCP, which the defendant attempted to provide Prather. Prather instructed the defendant to "[g]ive it to my man, cus," referring to the UC; the defendant acceded.

A couple months later, on December 16, 2024, around 8:30 am, a 911 caller reported seeing a man pointing a gun at cars near the 2800 block of Gainesville Street, SE, Washington, D.C.; the man was reported to be wearing a black North Face jacket and black jeans. Metropolitan Police Department ("MPD") officers arrived in the area and saw the defendant, who matched the caller's description, walking on the 2800 block of Gainesville Street. When the officers approached the defendant, asking if he was the individual they received a call about, the defendant responded, "man I just walked back that young lady and asked for the bag." He was detained, and soon thereafter, the officers discovered, in the defendant's front jacket pocket, a loaded firearm—a Glock 19, Gen 5 pistol with fifteen rounds of ammunition in the magazine and one round

chambered.



In his backpack, law enforcement further recovered an array of distribution-quantities of narcotics—to wit, one plastic bag containing 48 grams of cocaine base, or "crack;" two medium glass vials and 120 small glass vials, containing 62.13 grams of PCP; a bag containing 366 grams of marijuana; and a 20-ounce Canada Dry bottle with pink liquid, or suspected lean. These items are depicted in the below image.



The defendant was arrested and charged in D.C. Superior Court case number 2024 CF2 12831. In lieu of awaiting federal adoption of his case, the defendant elected to accept responsibility pre-indictment in the instant matter.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available; the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) To afford adequate deterrence to criminal conduct;
   c) To protect the public from further crimes of the defendant; and
   d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
   a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      i) Issued by the Sentencing Commission . . . ; and
      ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
   a) Issued by the Sentencing Commission . . . and
   b) That . . . is in effect on the date the defendant is sentenced

4

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

### III.     GUIDELINES CALCULATION

As the Final Presentence Report (ECF No. 14; hereafter, the "PSR") notes, the defendant's Criminal History Category is III, although the plea paperwork includes the parties' incorrect calculation of the defendant's Criminal History Category as II.  The United States agrees that the PSR otherwise captures the parties' plea agreement that the Defendant entered on July 8, 2025. *See* ECF No. 7.

The United States agrees that, for Count 1, the converted drug weight of the narcotics the defendant possessed for distribution on December 16, 2024, places him at an adjusted offense level of 24.  Crediting him for his early acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b), the defendant's offense level for Count 1 becomes 21.  At Criminal History Category III, the defendant's guidelines range on Count 1 is therefore 46 to 57 months' incarceration.[1]  The United States further agrees that the applicable guidelines sentence for Count 2 of the information is set forth in U.S.S.G. § 2K2.4(b), which requires that the minimum term of imprisonment, 60 months consecutive, be imposed pursuant to 18 U.S.C. § 924(c)(1)(A)(i).  Thus, with a Criminal History

---

[1] The plea paperwork reflects the parties' incorrect estimated guidelines range for Count 1—that is, Offense Level 21 at Criminal History Category II, resulting in an estimated guidelines range of 41 to 51 months' incarceration.

5

Category of III, the defendant's aggregate guidelines range on both counts is 106 to 117 months' incarceration.

IV.  **ARGUMENT**

The United States recommends that the Court sentence the defendant to a term of 106 months' incarceration, to be followed by a period of three years of supervised release given the nature and seriousness of his offense; his history and characteristics; and the need for the sentence imposed to satisfy the statutory requirements set forth in Sections 3553(a)(2)(A)-(D).

1.  **The Nature, Circumstances, and Seriousness of the Offense**

This factor supports the United States' recommended sentence. The dangers to the community stemming from the confluence of narcotics trafficking and firearms are well known. What's more, the evidence shows the defendant's conduct on December 16, 2024, was far from aberrational. Indeed, just a couple months prior, he furnished PCP to the UC during Prather's transaction with the UC. The proliferation of PCP in the District of Columbia has had devastating effects. "PCP is classified as a hallucinogen and induces distortion of sight and sound, while producing feelings of detachment."[2] It "produces feelings of invulnerability and a numbing effect on the mind that can often result in anger and rage," and in higher doses can include "reduced sensitivity to pain[.]".[3] Unsurprisingly, users of PCP "may act strangely or become aggressive and violent."[4]

It is worth noting that, absent the defendant's acceptance of responsibility at the earliest possible opportunity, the defendant would have faced mandatory minimum time for the quantities

---

[2] Drug Enforcement Administration, PHENCYCLIDINE (March 2025), https://deadiversion.usdoj.gov/drug_chem_info/pcp.pdf (last visited August 28, 2025).

[3] Metropolitan Police Department, Understanding the Risks and Dangers of Phencyclidine (PCP) at 2 (March 2011), https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/PCP.pdf (last visited August 28, 2025).

[4] U.S. National Library of Medicine, Substance use - phencyclidine (PCP) (Review Date May 4, 2024), https://medlineplus.gov/ency/patientinstructions/000797.htm (last visited August 28, 2025)

and types of narcotics possessed for distribution on December 16 (specifically 5 years for his possession of more than 28 grams of cocaine base), which reflects the seriousness of his offense. As detailed *infra*, though, his mitigating circumstances support a sentence within the guideline range.

### 2. The Defendant's History and Characteristics

The defendant's criminal history supports the United States' recommended sentence of 106 months' incarceration, which would be the harshest sentence thus far imposed against the defendant. The defendant's steady criminal conduct—involving, in some instances, either analogous or assaultive and threatening conduct—supports the need for a substantial sentence to disrupt the path the defendant has tread since 2015.

Even so, the United States' recommended sentence is also informed by the defendant's mitigating circumstances, including his exposure at a young age to acts of violence and narcotics trafficking, which likely negatively influenced his own conduct. *See* PSR at ¶ 57. Most significant to the United States' recommendation for a sentence at the bottom of the guidelines range is the defendant's unfaltering acceptance of responsibility pre-indictment, for which he should receive credit.

### 3. The Need to Promote Respect for the Law and Deterrence

The defendant's sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). Perhaps more than any other factor, the need to deter narcotics trafficking of dangerous drugs and the use of firearms in furtherance thereof weighs most heavily in favor of a sentence within the applicable guidelines range, albeit at the low end given the mitigation detailed *supra*. As the Court is well aware, drug trafficking is an inherently dangerous business, and this

danger is only amplified by the introduction of firepower, as the defendant possessed here. Given the attendant harms to the community, the defendant's sentence should disincentivize others from engaging in similar criminal conduct.

### 4. Other Factors

The United States' recommended sentence is also justified to give the defendant ample time to pursue further educational and vocational training and participate in other programs, including substance abuse treatment, to hopefully address issues that have impacted his development. The Undersigned hopes the defendant will approach this period of incarceration as an opportunity to utilize programming and educational opportunities to facilitate his reentry to the community as a productive and healthy member.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the Defendant to 106 months of imprisonment, to be followed by three years of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Sitara Witanachchi*
SITARA WITANACHCHI
D.C. Bar No. 1023007
Assistant United States Attorney
U.S. Attorney's Office
Violent Crime and Narcotics Trafficking Offenses
601 D Street, NW
Washington, D.C. 20530

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2025, a copy of the United States' Sentencing Memorandum was submitted via CM/ECF, which will transmit to counsel of record, Daniel Dorsey, Esq.

*/s/ Sitara Witanachchi*
Sitara Witanachchi
Assistant U.S. Attorney